UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GREGORY R. SCOTT,

                              Plaintiff,

                                                    **DECISION AND ORDER**
                                                         10-CV-272A

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.
_____


## <u>INTRODUCTION</u>

Plaintiff Gregory R. Scott ("Plaintiff") commenced this action on April 10, 2010, pursuant to § 42 U.S.C. 405(g), seeking review of a final decision by Michael J. Astrue, the Commissioner of Social Security (the "Commissioner"), denying disability benefits under the Social Security Act (the "Act"). The plaintiff sought disability insurance benefits for a lower back injury. In a decision dated September 17, 2009, the Administrative Law Judge ("ALJ") determined that the plaintiff retained the capacity to perform a full range of sedentary work and found the plaintiff not disabled under the Act. On February 26, 2010, the Appeals Council affirmed.

Pending now before the Court are cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The

plaintiff seeks judgment on the pleadings to reverse the findings of the Commissioner on the grounds that the denial of disability benefits was not supported by substantial evidence.  Specifically, the plaintiff contends that the ALJ did not properly evaluate the plaintiff's subjective complaints, failed to consider the testimony of a vocational expert, and did not accord the appropriate weight to medical reports of Physician Assistants ("PA") Scott Taylor and Jolene Griffith.  The Commissioner also seeks judgment on the pleadings on the grounds that the determination by the Commissioner that the plaintiff was not disabled for the evaluating period was supported by substantial evidence.  The Commissioner contends in particular that substantial evidence supports the ALJ's finding that the plaintiff's subjective complaints were less than credible, that the ALJ was not required to elicit the testimony of a vocational expert, and appropriate weight was apportioned to each medical report.

For the reasons stated herein, the Court finds that the Commissioner's determination that the plaintiff was not disabled for the relevant time period is supported by substantial evidence in the record.  Therefore, the Commissioner's cross-motion for judgment on the pleadings is granted and the ALJ's determination is affirmed.

## BACKGROUND

Plaintiff filed for disability insurance benefits on April 8, 2007 with an alleged onset date of September 22, 2002.  (Tr. 39).  In his application for

benefits, plaintiff stated that he was unable to work due to stabbing back pain that radiates to his upper back and through his legs.  (Tr. 98).  The plaintiff had not worked since September 22, 2002.  (Tr. 82).  The plaintiff also alleged that his daily activities were restricted due to his continuous pain.  (Tr. 90).  He resided with his mother and brother and did not participate in any housework and seldom prepared his own meals.  (Tr. 92).  The plaintiff also alleged that his mobility was restricted and he could not walk 10-20 feet without stopping to rest.  (Tr. 96).  When he did move around his residence, he needed to use a cane or furniture to support himself and maintained that he was primarily dependant on others to function on a daily basis.  *Id.*   On July 11, 2007, the plaintiff's claim for benefits was denied and the plaintiff requested a hearing.  (Tr. 40-43).  Plaintiff's request was granted and a hearing was set for August 10, 2009 before ALJ Michael Friedman.

The plaintiff appeared and testified at a hearing on August 10, 2009.  (Tr. 20-36).  The following information emerged at the hearing.  The plaintiff was 44 years old at the time his date last insured expired and claimed he could not perform any work that required physical exertion because of his constant back pain.  (Tr. 13).  The plaintiff received his general equivalency diploma ("GED") and completed one year of college.  (Tr. 34, 88.).  His primary past relevant work was as a metal worker and included employment as a grocery clerk after his injury.  (Tr. 83, 101-07).  The plaintiff alleged that he initially injured his back while

3

working on a construction job site in 1994 or 1995 and re-injured his back while
pushing an orange juice cart as a grocery clerk. (Tr. 26). The plaintiff has not
engaged in any work since re-injuring his back because the pain and the side
effects from his medication prevented him from holding down steady
employment. (Tr. 26 and 31-32). His alleged side effects included nausea,
itching, and grogginess. (Tr. 31).

In reference to his daily activities and functional abilities, the plaintiff
alleged that he could stand for ten minutes, sit for fifteen minutes, and walk less
than half a block. (Tr. 28). During the relevant period of evaluation, the plaintiff
resided at a boarding house and participated in cooking, cleaning, laundry, and
grocery shopping. (Tr. 90, 295). At the time of the hearing, the plaintiff resided
with his mother and brother and seldom participated in household chores and
sometimes needed assistance getting dressed. (Tr. 28). His daily activities
consisted of laying down, watching television, and reading. (Tr. 29-30). He also
alleged that he often had difficulty concentrating because of the side effects of his
medication. *Id*.

During the relevant evaluation period, the plaintiff attended Vocational and
Educational Services for Individuals with Disabilities ("VESID"). (Tr. 34). The
plaintiff did not complete the job placement process due to back pain. *Id*. The
plaintiff also attended physical therapy to reduce his pain but testified that he
stopped treatment because it was making his condition worse. (Tr. 24, 98).

Additionally, the plaintiff refused surgery that was recommended by his physicians.  (Tr. 25).

Following the hearing, the ALJ concluded in a written decision on September 17, 2009 that the plaintiff was not disabled and was not entitled to receive disability insurance benefits.  The ALJ found that the plaintiff retained a residual functional capacity ("RFC") to perform a wide range of sedentary work. (Tr. 16).  The medical evidence in the record did not establish that the plaintiff possessed a mental or physical impairment that would prevent him from engaging in any substantial activity.  *Id*.  Additionally, the plaintiff's allegations as to the intensity and persistence of pain were not supported by "medically acceptable clinical and laboratory diagnostic techniques."  *Id*.  In the present case, the ALJ found that the plaintiff did not perform any substantial gainful activity from the alleged onset date of September 22, 2002 through the date last insured of September 30, 2007, and had a severe impairment of lumbar degenerative disk disease.  (Tr. 10).  While the impairments presented a significant limitation on the plaintiff's ability to perform basic work and were found to be severe under the regulations, the impairment did not rise to the level of disability.  (Tr. 11).   Upon evaluation of the medical evidence, the ALJ found that the plaintiff did not suffer an impairment, standing alone or combined with other impairments, that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*.   In the fifth step of the evaluation

5

process, the ALJ determined that through the date last insured the plaintiff

maintained the ability to perform a full range of sedentary work.  *Id.*[1]  The plaintiff

appealed the ALJ decision and the Appeals Council affirmed.

## DISCUSSION

Following exhaustion of the administrative proceedings, the plaintiff brought

this action.  The plaintiff alleges that the ALJ erred as a matter of law in

determining that the plaintiff was not disabled.  Plaintiff contends the ALJ did not

appropriately consider the plaintiff's subjective complaints, failed to hear the

testimony of a vocational expert, and did not apportion the proper weight to

medical reports.  The Commissioner counters that the ALJ properly found that the

plaintiff's subjective complaints were less than credible and unsupported by

medical evidence in the record.  Furthermore, the Commissioner supports that

the ALJ did not need to hear the testimony of a vocational expert because the

plaintiff did not manifest nonexertional limitations that substantially affected his

ability to work and appropriate weight was given to the reports of PA's Taylor and

Griffith.

---

[1]  Sedentary work, as defined by 20 C.F.R. § 404.1567(a), involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools, requiring sitting for up to 6 hours and walking and/or standing for periods up to 2 hours.

1.    **Jurisdiction and Standard of Review**

This Court has jurisdiction to review the final determination of the
Commissioner denying a plaintiff's application for disability insurance benefits if
the decision is a result of legal error or if the findings of fact are not supported by
substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "more
than a mere scintilla.  It means such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion."  *Burgess v. Astrue*, 537 F.3d
117, 127 (2d. Cir. 2008) (internal quotation marks omitted); *Richardson v.
Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*,
305 U.S. 197, 229 (1938)).

A claimant may be granted disability benefits if found "disabled" within the
meaning of the Act.[2]  The Act establishes a five-step evaluation process used to
determine whether an individual is entitled to disability insurance benefits.  *See
Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); 20 C.F.R. §§ 404.1520, 416.920.
The first step in the process is a determination of whether the plaintiff is engaged
in substantial gainful activity.  If the plaintiff is able to perform substantial gainful
activity, it will preclude a finding of disability.  20 C.F.R § 404.1520(a)(4)(I).  When
the plaintiff is unable to perform substantial gainful activity, the Commissioner will

---

[2] A finding of disability is warranted when the individual is unable "to do any substantial
gainful activity by reason of any medically determinable physical or mental impairment
which can be expected to result in death or which has lasted or can be expected to last
for a continuous period of not less than twelve months."  20 C.F.R § 404.1504.

consider the medical severity of the impairment and whether the impairment

significantly limits the claimant's physical or mental ability to perform basic work

activities.  If such an impairment exists, the third inquiry is whether, based on

medical evidence in the record, the plaintiff has an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1 of the regulations.  Once the plaintiff's condition

is found in the listed impairments, the Commissioner will make a determination

that the plaintiff is disabled.  An unlisted impairment prompts the Commissioner to

determine whether the plaintiff has the Residual Functional Capacity (RFC) to

perform his past work.  In the last step, if the plaintiff is unable to perform his past

work, the Commissioner will determine whether the plaintiff is able to perform any

other work that exists in the national economy.

　　　The plaintiff carries the burden of proof in the first four steps of the

evaluation.  *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir. 1986).  When the

plaintiff establishes that he is not capable of performing past relevant work, the

burden shifts to the Commissioner to determine whether Plaintiff is capable of

performing other work which exists in significant numbers in the national

economy.  *See id*.

## 2.　　The ALJ Gave Sufficient Weight to the Plaintiff's Subjective Complaints

　　　The plaintiff argues the ALJ failed to attach appropriate weight to the

plaintiff's subjective complaints of pain and erred in finding the plaintiff's

8

testimony to be less than credible.  According to the plaintiff, his subjective

complaints of pain were supported by objective medical evidence and credible

when considered in connection with the medical reports.  Therefore, the ALJ's

credibility determination is not supported by substantial evidence.  The

Commissioner argues that the plaintiff's subjective complaints are less than

credible because the medical opinions of examining physicians suggest a greater

capacity to engage in sedentary work than alleged by the plaintiff in his testimony.

Further, the Commissioner argues the plaintiff's subjective complaints in

reference to the intensity, persistence, and severity of the complaints are

inconsistent with medical evidence, such as a lumbar Magnetic Resonance

Imaging ("MRI") in 2006 which showed only a small disk herniation with the S1

roots remaining normal.  (Tr. 337).   According to the Commissioner, the record

also contains conflicting testimony as to the plaintiff's daily activities.

        In making a determination of disability, the ALJ will consider all symptoms,

including allegations of pain and the extent the symptoms "can reasonably be

accepted as consistent with objective medical evidence and other evidence."  20

C.F.R. § 404.1529(a).  When the plaintiff alleges subjective complaints of pain,

the ALJ retains the ability to "evaluate the credibility of the [plaintiff] and to arrive

at an independent judgment, in light of the medical findings and other evidence,

regarding the true extent of the pain alleged."  *Brandon v. Bowen*, 666 F. Supp.

604, 608 (S.D.N.Y. 1987).  Credibility determinations are reserved to the

9

Commissioner, and the district court will give deference to the ALJ, who has observed the demeanor of the plaintiff during testimony.  *See Serra v. Sullivan*, 762 F. Supp. 1030, 1034 (W.D.N.Y. 1991); *Buchbinder v. Bowen*, 709 F. Supp. 389, 395 (S.D.N.Y. 1989).  The presence of subjective complaints may suggest that the plaintiff's impairment reaches a level of severity that is not apparent in the objective medical evidence.  In such a case, the ALJ will consider additional factors in evaluating the credibility of the subjective complaints.  *See* 20 C.F.R. § 404.1529; SSR 96-7p.[3]  In addition, it is permissible for the ALJ to make a credibility determination on whether the plaintiff's testimony is consistent with medical documentation and whether the plaintiff adheres to medical treatment. *See* SSR 96-7p.

The ALJ found that the plaintiff's subjective complaints "concerning the intensity, persistence, and limiting effects" are less than credible due to inconsistency with the RFC assessment that the plaintiff was capable of engaging in the full range of sedentary work.  (Tr. 17).  The ALJ took into consideration the plaintiff's daily activities and found that statements made during the relevant evaluation period were contradictory to the statements made in 2009.  During the relevant evaluation period dated May 22, 2007, the Plaintiff stated that he

---

[3] These factors, as listed under 20 C.F.R. § 404.1529(c)(3)(i)-(vii), are: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of medication taken to alleviate pain; (5) other treatment available to relieve pain; (6) any other measures the claimant uses to treat pain; (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.

assisted in cooking, cleaning, laundry, and grocery shopping while residing in a boarding house.  (Tr. 295).  He was able to perform personal hygiene functions without assistance and watched television, listened to the radio, and read.  (Tr. 296).  During the relevant evaluation period, the plaintiff was able to watch television, listen to the radio, read, and complete "a lot" of crossword puzzles. (Tr. 94).

In his testimony before the ALJ on August 10, 2009, in contrast, the plaintiff stated that his daily activities were limited due to back pain and concentration issues induced by his medication.  (Tr. 28).  The plaintiff stated that it took him 25-45 minutes to get dressed in the morning and that he sometimes needed assistance in putting on his socks.  (Tr. 29).  He stated that his mother and brother primarily took care of him and he rarely assisted in the household chores. (Tr. 33).  The plaintiff also testified that he rarely ventured out of the house, except for doctor's appointments, and could not attend church because he could not sit for the duration of the mass.  *Id*.  The plaintiff's limitations increased in severity than what was alleged during the relevant period of coverage.  The plaintiff also alleged that he could not participate his normal daily activities as a result of the side effects of the medication he was taking to alleviate his constant pain.   The plaintiff alleges his condition deteriorated to the point where he could no longer watch television because he was unable to focus on the programming because of the side effects of his medication.

11

In light of the significant contrast between the plaintiff's 2007 and 2009 testimony, the ALJ properly found that the alleged side effects were less than credible because there was a lack of medical evidence documenting medication side effects. (Tr. 16). The presence of medication side effects was not documented until reported by physician assistants Griffith and Taylor, who noted that the plaintiff suffered nausea from hydrocodone, after the relevant evaluation period. There is no mention of a lack of concentration as a side effect.

The ALJ also correctly determined that the medical evidence did not support the plaintiff's subjective complaints. The medical record contains an examination by Dr. Thomas Rodenhouse in 2003. A lumbar MRI revealed a small disc protrusion and slight bulging annulus at the L5 level with only slight extrinsic pressure effect to the adjacent thecal sac and slight narrowing of the left lateral recess. (Tr. 160). Dr. Rodenhouse noted that the plaintiff's alleged symptoms "were out of proportion to the lesion demonstration." (Tr. 169). In addition, an examination conducted by Dr. Brij Sinha on May 22, 2007, Dr. Sinha noted that the plaintiff did not suffer any acute distress and had a normal gait with no limp that did not coincide with the plaintiff's use of a cane. (Tr. 296). The plaintiff did not need assistance changing for the exam or getting on or off the examination table. *Id.* The plaintiff was able to walk on his heels and toes, squat, and rise from a chair. *Id*; *see Montalvo v. Astrue*, No. 08-CV-2176, 2010 WL 1223322 at *7-8 (E.D.N.Y. 2010) (holding the ALJ properly discredited the

12

plaintiff's subjective complaints when she was able to change for an exam without difficulty, get on and off the exam table without assistance, and did not rely on her cane for movement).  Dr. Sinha also observed the plaintiff had a full range of motion in the cervical spine at 70 degrees leading to a "mild to moderate limitation for prolonged walking, bending, and lifting." *Id.*  In June 2007, the plaintiff was examined by Dr. Qutubuddih K. Dar.  Dr. Dar observed that the plaintiff had normal bulk and symmetry, normal range of motion, no gross deformity, and normal pulses in the extremities despite walking with a limp and using a cane.  (Tr. 366).

The ALJ's decision is further supported by evidence that the plaintiff did not pursue some treatment options that were available to him.  When determining the credibility of the plaintiff's subjective complaints, the ALJ will also consider other treatment available to relieve pain or other measures the plaintiff has taken to reduce pain.  *See* 20 C.F.R. § 404.1529(c)(3)(v-vi).  In the present case, the plaintiff was recommended to participate in physical therapy with Dr. Thomas Dwyer.  (Tr. 176, 178, and194).  The plaintiff was discharged from physical therapy due to non-compliance and not showing up to appointments.  (Tr. 206); *see Boomer v. Astrue*, No. 1:05-CV-283 (NPM), 2008 WL 2433650, *7 (N.D.N.Y. 2008) (holding that the ALJ correctly determined that the plaintiff's subjective complaints were not credible when review of the medical record showed that plaintiff refused manipulative therapy in conjunction to other evidence).  Dr. Dar

also recommended that the plaintiff consider the possibility of using a spinal stimulator insertion for pain management. *Id*. The plaintiff declined surgery to repair his back. (Tr. 25).

As a result, the ALJ found that the plaintiff's impairments could reasonably be expected to produce to alleged symptoms, but the plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairment does not coincide with the RFC assessment. The RFC suggests that the plaintiff is capable of engaging in a greater range of activity than alleged in the subjective complaints and the ALJ did not err in determining that the plaintiff's subjective complaints were less than credible.

Taking into account the entirety of the record, the ALJ properly determined that the plaintiff's subjective complaints were less than credible. There is a contrast between the plaintiff's daily activities during the relevant evaluation period and testimony before the ALJ. The plaintiff attributed his inability to engage in his normal daily activities was a result of his inability to concentrate due to his medication. Yet, there is no documentation of such a side effect in the medical records. The plaintiff alleged that physical therapy did not help alleviate pain, but the record shows that the plaintiff only attended one session and was discharged due to non-compliance. Further supporting the ALJ's determination that the plaintiff's subjective complaints are less than credible, the plaintiff also refused a surgical procedure that may have helped rectify his impairment. The

14

ALJ properly considered the entire record when assessing the credibility of the plaintiff's subjective complaints and the ALJ's determination that the complaints are less than credible is supported by substantial evidence.

3.    __The ALJ is not Required to Elicit Testimony of a Vocational Expert__

The plaintiff also argues that the ALJ failed to consider the testimony of a vocational expert in determining whether the plaintiff is able to perform other work in the national economy.  The plaintiff contends that the ALJ improperly relied on the Medical Vocational Rules in determining whether there were jobs present in the national economy consistent with the plaintiff's restrictions and limitations. The Commissioner counters that the ALJ was not required to consider the opinion of a vocational expert here because the plaintiff did not present evidence of nonexertional limitations that would significantly diminish his ability to work.

Pursuant to step five of the disability insurance benefits analysis, the ALJ must determine if the plaintiff can perform any work in the national economy in light of his limitations.  *See* 20 C.F.R. 404.1560(c).  This requires the ALJ to consider the plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational guidelines established under  20 C.F.R. 404, Subpart P, Appendix 2.  When the plaintiff possesses nonexertional limitations that significantly diminish his ability to perform the full range of employment found in the medical vocational guidelines, the Commissioner is required to introduce testimony of a vocational expert confirming the existence of jobs in the national

15

economy that the plaintiff will be able to perform.  *See Bapp v. Bowen*, 802 F.2d

601, 603 (2d Cir. 1986).  When the exertional limitations of the plaintiff are

increased due to nonexertional limitations, exclusive reliance on the medical-

vocational guidelines to determine the existence of other jobs is impermissible.

*See Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).  Nonexertional

limitations include difficulty seeing or hearing, performance of manipulative or

postural functions, such as reaching, stooping, climbing, crawling, or crouching,

or difficulty maintaining attention or concentration.  *See* 20 C.F.R. §

404.1569a(c)(i-vi).

Here, the ALJ correctly found that the plaintiff did not suffer from

nonexertional limitations during the relevant evaluation period.  While the plaintiff

alleged that he had difficulty concentrating as a result of his medication, the

presence of such symptoms were not identified in the relevant period of

evaluation.  During the relevant period in August and May 2005, the plaintiff was

evaluated and referred for job placement.  (Tr. 14 and 16).  The plaintiff met with

a VESID counselor and accepted that he was capable of performing sedentary

work.  (Tr. 275).  The plaintiff contends that his lack of concentration and his need

to take unscheduled work breaks and constantly change positions would

negatively affect his ability to maintain full-time work and contribute to his

absenteeism.  (Tr. 373-80, 399-404).  However, the plaintiff completed at least a

year of college, performed nontransferable skilled or semiskilled labor, had

cognitive abilities in the average range, and concluded that there are jobs in the national economy that the plaintiff could engage in. (Tr. 18). Additionally, the plaintiff's allegations of nonexertional limitations were less than credible because the medical evidence did not support such claims. In Dr. Sinha's medical opinion, the plaintiff only had mild to moderate limitations for walking, bending and lifting. (Tr. 14). Without sufficient evidence of a nonexertional limitation, a vocational expert was not required to attend the hearing and testify and the ALJ properly relied on the medical-vocational guidelines. *See McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 571 (S.D.N.Y. 2009) (applying SSR 85-15, ALJ's reliance on the Medical Vocational rules was appropriate because the inability to stoop, bend, crouch, or kneel would not substantially affect the ability to perform a full range of sedentary work).

Because the plaintiff's complaints about nonexertional limitations were less than credible and unsupported by medical evidence, the ALJ was not required to rely on the testimony of a vocational expert in order to determine that the plaintiff was capable of performing a full range of sedentary work.

4.    **The ALJ Properly Evaluated the Opinions of Treating Sources to Reasonably Conclude that Plaintiff Retained RFC**

The plaintiff contends that the ALJ failed to apportion the appropriate weight to the medical opinions of PAs Griffith and Taylor. The Commissioner argues that the PAs' assessments cannot be afforded controlling weight because

they are considered  non-acceptable medical sources under 20 C.F.R. §

404.1513(a) and § 404.1527(a)(2).

        The determination of whether an individual is disabled is reserved to the

Commissioner.  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); 20 C.F.R. §

404.1527.  "A conclusory statement by a physician that a patient is disabled or

unable to work does not receive controlling weight or special significance."  In

addition, the Commissioner reserves the ability to resolve conflicts in medical

evidence.  *See Monguer v. Heckler*, 722 F.2d 1033, 1039 (2d. Cir. 1983).  PAs

are considered "other sources," and their medical reports cannot establish the

existence of a medically determinable impairment.  *See* SSR 06-3p.  While

evidence of a disability must be established by an "acceptable medical source,"

reports from other sources may provide additional insight into the severity of the

impairment.  *See Id*.

    In the present case, the ALJ correctly gave more weight to the medical

testimony of Dr. Sinha and Dr. Rodenhouse.  Dr. Sinha is a board-certified

specialist in orthopedics, whose skill and training provides "greater insight into the

limitations imposed by the claimant's physical impairments." (Tr. 12).  Dr.

Rodenhouse's finding that the plaintiff's complaints were out of proportion with

the MRI results is also supported by the medical record.  Both doctors' reports

are consistent as to the nature and severity of the plaintiff's conditions.

The report by PA Griffith was correctly given less weight in determining the plaintiff's impairments. The report imposed manipulative and environmental limitations without evidence of medically determinable impairments presenting functional limitations of not being able to sit, stand, or walk less than one hour a day. (Tr. 375). PA Griffith also referenced the plaintiff's previous physical therapy secession and concluded that it was ineffective in relieving pain. (Tr. 378). The assertion that the physical therapy was uneffective is based on one session and does not take into account that the plaintiff was dismissed from therapy due to continuous no-shows.

The ALJ also found that the report by PA Taylor was not entitled to controlling weight because a PA is not an acceptable medical source that can give a controlling opinion on whether the plaintiff is disabled. In addition, PA Taylor was employed by Dr. Dar and the conclusions of PA Taylor relating to the functional limitations of the plaintiff are inconsistent with the progress notes of Dr. Dar.

As a result, the ALJ did not have to give controlling weight to the PAs because they are considered "other sources." The ALJ also had discretion to consider such reports in conjunction with other evidence and the ALJ did not commit an error by not according controlling weight to the PAs' reports. It was appropriate for the ALJ to give more weight to Dr. Sinha and Dr. Rodenhouse because the evaluations are consistent with each other and are products of acceptable medical sources.

19

## **CONCLUSION**

For all the foregoing reasons, the Court grants the Commissioner's motion

(Dkt. No. 7) and denies the plaintiff's motion (Dkt. No. 6).  The Clerk of the Court

is directed to close this case.

SO ORDERED.


*s / Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE


DATED: August 8, 2011